### The President, &c. of the ADAMS BANK *versus* HUMPHREY ANTHONY.

Where the holder of two notes made by the same promisor commenced an action against him, declaring on the common counts for a sum greater than the amount of the two notes, and attached property sufficient to satisfy both, but did not intend to include in the action one of the notes, which was signed by a surety, and there were subsequent attachments of the same property by other creditors, it was *held*, that the plaintiff was not bound to comply with the request of the surety, to put into the action the note signed by the surety.

Whether by so doing the plaintiff would not commit a fraud upon the other attaching creditors which would deprive him of the benefit of his attachment, *quære.*

*Held* also, that an offer of indemnity for so doing, by the surety, would not vary the obligations and duties of the plaintiff.

ASSUMPSIT, on the common money counts, for 3,000 dollars.

At the trial, before *Wilde* J., the plaintiffs produced in support of the action, a promissory note, dated the 17th of January, 1833, in which the firm of Anthony & Wadsworth, as principals, and the defendant as surety, jointly and severally promised to pay the plaintiffs, or their order, 2,000 dollars, in four months. Anthony, the partner of Wadsworth, was John Anthony, a son of the defendant. On the back of the note were the following indorsements : — "Received May 10, 1833, $334·85, to take effect from the 20th of May." — "Received $34·85, Sept. 23, 1833." The execution of the note was admitted, and the plaintiffs there rested their case.

The defendant introduced the record of a suit brought by the plaintiffs against Anthony & Wadsworth. The writ in that suit was dated the 12th of July, 1833, and contained the common money accounts, the *ad damnum* being laid at 6,000 dollars. A private attachment was made upon it on the same day, on real estate of John Anthony, worth much more than $6,000. Judgment was rendered for the plaintiffs in that suit, for $2,230, on another note against Anthony & Wadsworth, on which one Hoxie was surety.

The defendants also introduced the record of an action brought by Hoxie against Anthony & Wadsworth, in which the same real estate was attached to a large amount, on the 11th of July, 1833. Judgment was rendered against Hoxie

on a nonsuit, at May term 1836, on the day of the trial of the present action.

Soon after the attachment by the plaintiffs the same property was attached by other creditors of Anthony & Wadsworth.

It appeared that John Anthony and Wadsworth failed in business in the summer of 1833, and had been insolvent and without property ever since.

The cashier of the bank testified, that he made the writ against Anthony & Wadsworth, and that he did not intend to include in it the note on which the present defendant was surety ; that he had a general intention to sue all demands against Anthony & Wadsworth that were due, but that he did not then suppose this note to be due ; and that his reasons for this opinion were, that on the 10th of May, 1833, the defendant paid $334·85, saying he wished the note to lie four months longer, to which the cashier assented, and with the consent of the defendant the indorsement of that date was made upon the note, and on the 23d of September, 1833, the defendant paid $34·85 more, saying the same thing as before, to which the cashier assented, and, with the defendant's consent, made the second indorsement. The witness did not know whether the defendant, at the time of the last payment, was aware of the plaintiffs' attachment, but it had previously been talked of about town.

The defendant offered to prove that the transactions between him and the cashier did not amount to an agreement on the part of the bank to forbear exacting payment for four months, but as the judge was of opinion that, on the testimony of the cashier alone, the bank could legally commence an action on this note at any time after the 20th of May, 1833, the evidence was excluded.

It was testified, that the defendant, in the autumn of 1834, requested the plaintiffs to include this note in their action against Anthony & Wadsworth, and offered to indemnify them against all the consequences of so doing ; that the plaintiffs promised to include this note, provided their counsel (Mr. Putnam) should be satisfied that the attachment in the action by Hoxie would be discharged ; that John Anthony, in behalf of the defendant, went with Mr. Putnam to the lodgings of Mr Whiting, the counsel of John Anthony, and stated to him

this agreement; that Mr. Whiting assured Mr. Putnam, that he had in his hands an instrument which would discharge Hoxie's attachment, and gave his word that that attachment should be released, if the proposed arrangement between the present parties should be made; and that Mr. Putnam said he was perfectly satisfied. The cashier testified, that he told the defendant, " that he did not believe this note was due, and that if it were included in their previous action it would be a fraud upon other creditors; that if the defendant would pay this note and also the note on which Hoxie was surety, he might take the suit and do what he would with it; and that he need not pay the money, but might give his own note for the two, and on such time as he might choose, and then take the control of the suit; " that the defendant did not accede to this proposition; that he told the defendant, that if he would satisfy the plaintiffs' counsel, Mr. Putnam, so that he would advise them that it was safe to put this note into the former suit, he would agree to put it in; that Mr. Putnam afterwards said, " he was satisfied for himself, but the plaintiffs might do as they thought best; he would not advise them about it; " that the witness then told the defendant, that the plaintiffs would do nothing about it, but that he did not tell him the reason; that the sole reason was, because Mr. Putnam had not seen the release of Hoxie's demand. On further examination he said, that there was also a question, whether they had a right to include this note in the former suit.

The plaintiffs alleged, that as the declaration in their writ against Anthony and Wadsworth contained only general counts, they had no right to take judgment on any causes of action not intended to be sued, at the time of making their attachment, to the prejudice of subsequent mortgagees or attaching creditors.

The questions of law arising on these facts were reserved for the consideration of the whole Court.

C. A. Dewey and D. N. Dewey, for the plaintiffs. In regard to the rights of a creditor as against a surety, they cited *Baker* v. *Briggs*, 8 Pick. 129; *Hayes* v. *Ward*, 4 Johns. Ch. R. 129; *Hunt* v. *Bridgham*, 2 Pick. 581; *Frye* v. *Barker*, 4 Pick. 382; *Fulton* v. *Matthews*, 15 Johns. R. 433; as to the rights of creditors where attachments are made

on general counts, *Fairfield* v. *Baldwin*, 12 Pick. 388 ; *Willis* v. *Crooker*, 1 Pick. 204 ; and as to the duties of sureties, *Beardsley* v. *Warner*, 6 Wendell, 610 ; *Warner* v. *Beardsley*, 8 Wendell, 200, *Crane* v. *Newell*, 2 Pick. 612.

*Hubbard* and *Alvord*, for the defendant. This note was due and might have been put into the former action. *Oxford Bank* v. *Lewis*, 8 Pick. 458 ; *Blackstone Bank* v. *Hill*, 10 Pick. 129.

Evidence that it was not intended to be included, was inadmissible, the declaration being sufficient to embrace it. *Hodges* v. *Holland*, 16 Pick. 395.

The attachment of property being sufficient for the satisfaction of the two notes, and the plaintiffs having voluntarily omitted to take judgment on the one now in suit, the surety is discharged. *Boston Hat Manufactory* v. *Messinger*, 2 Pick. 223 ; *Baker* v. *Briggs*, 8 Pick. 129 ; *Parsons* v. *Briddock*, 2 Vern. 608 ; *Rees* v. *Berrington*, 2 Ves. jun. 542 ; *Wright* v. *Morley*, 11 Ves. 22 ; *Ex parte Rushforth*, 10 Ves. 409 ; *Stevens* v. *Cooper*, 1 Johns. Ch. R. 430 ; *Clason* v. *Morris*, 10 Johns. R. 524 ; *Hayes* v. *Ward*, 4 Johns. Ch. R. 123 ; *Commonwealth* v. *Wolbert*, 6 Binney, 300 ; *Mayhew* v. *Cricket*, 2 Swanst. 185 ; *Capel* v. *Butler*, 2 Simons & Stuart, 457 ; *Commonwealth* v. *Vanderslice*, 8 Serg. & Rawle, 452 ; *Lichtenthaler* v. *Thompson*, 13 Serg. & Rawle, 157 ; *Finney's Adm.* v. *Commonwealth*, 1 Rawle, Penr. & Watts, 240 ; *Burrows* v. *M'Whann*, 1 Desauss. 409 ; *Baird* v. *Rice*, 1 Call, 18 ; *Praed* v. *Gardiner*, 2 Cox, 86.

The weight of the testimony is, that the plaintiffs agreed to put this note into their former action, provided their counsel should be satisfied, not that it might be done with safety, but that the previous attachment of Hoxie would be removed. He was satisfied, and the plaintiffs are bound by this agreement. The trouble of going to Whiting, and the disclosure of valuable information, were a sufficient consideration for their promise. Chit. Contr. 7 ; *Sturlyn* v. *Albany*, Cro. Eliz 67 ; Com. Dig. *Action &c. upon Assumpsit*, *B* 4. If they were not satisfied because the release was not shown, they should have given notice of this objection. The defendant's offer of indemnity imposed on the plaintiffs the duty of including this note. *Bellows* v. *Lovell*, 5 Pick. 307.

MORTON J. delivered the opinion of the Court  The defendant, though an original promisor, stands in the relation of surety to his co-promisors.  This gives him some privileges and advantages which the principals are not entitled to, and subjects the plaintiffs to some duties and obligations which are not due to the principals.

The note in suit was a binding contract on all the makers ; and the only question now is, whether the plaintiffs have done any thing which will discharge the surety.  It must be borne in mind, during the investigation, that the principals had become insolvent, and that there was a scramble for their effects by their sureties, indorsers and creditors.  Between those different claimants it was not the right or the duty of the plaintiffs to show favor or partiality.

The general principles contended for by the defendant's counsel are undoubtedly correct.  There are several acts of the creditor, which, though they might have no effect upon the liability of principals, would discharge sureties.  If the creditor releases collateral security for his debt, or discharges an indemnity, or gives time of payment to the principal, or does any other act to the prejudice of the legal rights of the surety, he thereby exonerates the surety.  If the creditor has in his hands security or the means of payment, he holds them for the benefit of the surety as well as himself, and if he gives them up, to the injury of the surety, he violates a trust which will discharge him.  These principles, which seem to be fully supported by the authorities cited by the defendant's counsel, though found in the code of equity, have been substantially adopted by our courts of law.  *The Boston Hat Manufactory* v. *Messinger*, 2 Pick. 223 ; *Baker* v. *Briggs*, 8 Pick. 128.  But we do not think that the defendant brings himself within them.

When the plaintiffs commenced their former action and made their attachment, it was optional with them to include such and so many of their demands against the principals as they thought proper.  They were under no obligation to secure either of their sureties ; and if they secured a part, the others would have no reason to complain.  In the defendant's case it would have been a breach of good faith to have sued his note.  They had, at his request, implicitly agreed to give a further credit upon it,

which had not expired when their suit was commenced. And although there had been concluded no perfect and obligatory contract to this effect, yet if they had sued it, without his consent, it would have been dishonorable, if not dishonest. If, therefore, the plaintiffs had specifically described the notes upon which they made their attachment, omitting, as they would have done, the one now in suit, the defendant would have had no ground of complaint.

But their declaration was general and broad enough to cover this note. The defendant contends that, upon his request, they were bound to include it in their judgment ; and that because they refused to do it he is exonerated from his liability. The plaintiffs, when they commenced their former action, did not *intend* to include this note, and never supposed that it was included. It matters nothing, that their intention was formed upon false reasoning, and that had they known their legal rights they would have come to a different determination. But even if they had known that they were not legally holden to grant the delay to which they had agreed, and for which they had received interest, it is not certain, nor even probable, that they would have disregarded this arrangement with the defendant himself and have sued his note. But it is enough for our present inquiry, that, in fact, their *intention* was not to include it in this writ. Were they afterwards, upon the defendant's request, bound to insert it ? We think they were not.

It is at least questionable whether they had a legal right to do it, and whether the introduction of this note into their judgment would not have been a fraud upon the after attaching creditors, which would have avoided their own attachments. The case of *Hodges et al. v. Holland,* 16 Pick. 395, relied upon by the defendant's counsel, scarcely touches this point ; but as far as it bears upon it, is adverse to the defendant's argument. In that case there were no subsequent attachments. And this circumstance seems to be relied upon by the Court, and furnishes an inference, that in their opinion, had there been any, it would not have been safe for the plaintiff to give in evidence a demand not originally intended to be included in his writ. We therefore think the plaintiffs acted correctly and wisely in refusing to incur this risk.

But even if they could have done it without danger to then legal rights, they were under no obligation to do it. And it was alike forbidden by principles of honorable and fair dealing and of impartial justice. It would have been to take advantage of a power which fortuitous circumstances had placed in thei. hands, to favor one creditor at the expense of others equally meritorious.

Nor did the offer of indemnity by the defendant, in the slightest degree vary the legal or moral obligations and duties of the plaintiffs. Had the indemnity been adequate, the plaintiffs were not bound nor ought they to have acceded to it And if they did wrong at all in the transaction, it was in their offer to give the defendant the control and management of their suit upon any terms.

No more were they bound by any agreement, to include this note in their judgment. There were proposals made and answers returned, and much negotiation between the parties and an approximation to that union of their minds which constitutes an agreement ; but not the actual contact which is necessary to its consummation. But if the agreement had been closed, it would not have been obligatory. Were there no other infirmity, the want of a legal consideration would have been fatal to it.

On the whole, we are perfectly satisfied that the plaintiffs have done nothing in this matter, of which the defendants can rightfully complain ; and that he has no legal or equitable defence to this action.

*Defendant defaulted.*